In the Matter of BOARD OF EDUCATION, COMMACK UNION FREE SCHOOL DISTRICT, Appellant, v GORDON M. AMBACH, as Commissioner of Education of the State of New York, et al., Respondents.

Third Department, December 24, 1986

### APPEARANCES OF COUNSEL

*Cahn Wishod Wishod & Lamb (Eugene L. Wishod* and *Robert H. Cohen* of counsel), for appellant.

*Robert D. Stone (Kenneth Pawson* and *James H. Whitney* of counsel), for Gordon M. Ambach, respondent.

*Julius Blaushield* for Joseph B. Margolin, respondent.

### OPINION OF THE COURT

MIKOLL, J.

The issue before us is whether an individual employee, asserting a right under a collective bargaining agreement in force at the time of his involuntary teaching assignment, is barred from asserting that right in a separate appeal to the

Commissioner of Education pursuant to Education Law § 310 (7).

Respondent Joseph B. Margolin is a tenured teacher in the Commack Union Free School District in Suffolk County. He serves in a general secondary tenure area and is certified as a high school social studies teacher with 16 years of experience. Because of the excess of social studies teachers with seniority-protected job rights and a lack of English and mathematics teachers, involuntary assignments were made of social studies teachers, including Margolin, to other than social studies classes.

In the 1984-1985 school year, Margolin was assigned outside his certified area to teach a class entitled "Writing and Reading". He accepted the assignment without objection until he learned in September that another teacher with less seniority was assigned to teach entirely within the social studies curriculum. Margolin lodged a complaint with his union, the Commack Teachers' Association (CTA), which was the exclusive negotiating representative for the district's high school teachers. The collective bargaining agreement between petitioner and CTA required that a teacher's seniority be recognized in making assignments. It also provided for a four-step grievance procedure, the fourth step of which consisted of binding arbitration, a stage that only CTA could initiate.

CTA found Margolin's grievance meritless and refused to pursue it for him. Margolin pursued his grievance independently up the three steps available to him. At the first two levels of the grievance procedure, the grievance was denied on the ground that the reason for assigning a less senior teacher to a totally social studies assignment was justified by other factors including efficient use of staff resources and rotation of assignments on an "equitable and fair basis"; thus, it was concluded, seniority rights had been properly subordinated. At the third stage, the Hearing Officer held that the failure to change Margolin's assignment in late August, when additional assignments to social studies classes became available, was proper. The Hearing Officer found that the principal adequately considered available course preparation time, prior preparation and prior teaching experience, and that these factors plus factors set out in the collective bargaining agreement* entitled her to subordinate seniority rights.

Having exhausted the procedures available to him under

---

* The collective bargaining agreement provided in part:

the collective bargaining agreement and CTA having declined to pursue binding arbitration, Margolin commenced a proceeding by petition to respondent Commissioner of Education pursuant to Education Law § 310 (7). Petitioner, in its answer to Margolin's appeal, contended that it should not be entertained because (1) Margolin had failed to show that CTA had breached its duty of fair representation to him, (2) he failed to join CTA as a necessary party, and (3) petitioner's construction of the collective bargaining agreement was neither irrational, arbitrary or capricious.

The Commissioner determined that CTA was not a necessary party to the appeal and granted Margolin's petition holding that petitioner had failed to present in specific enough detail the factors upon which it based its determination and that petitioner failed to properly consider Margolin's seniority. Accordingly, petitioner's decision was reversed as arbitrary and capricious.

Special Term affirmed the Commissioner's determination finding that it was not arbitrary or capricious or in violation of law, and dismissed petitioner's CPLR article 78 application.

Petitioner argues on this appeal that Margolin, an individual employee asserting a right under a collective bargaining agreement in force at the time, is barred from asserting that right in an appeal to the Commissioner absent a clear showing of a breach by CTA of its duty of fair representation, that CTA is a necessary and indispensable party to the appeal and failure to join it is fatal to the proceeding, and, finally, that

"18.01 The right and responsibility of administrative personnel to make wise and judicious use of the professional staff is recognized and affirmed. In the exercise of this right, administrative personnel are to use as the prime criterion the welfare of the children placed in the teacher's charge taken together with efficient staff utilization in professional activity. To this end, the parties agree to the following:

"a. The teaching assignment of a teacher shall be entirely within the area of his competency and/or certificate and in no event shall a teacher teach more than one period per day outside his area of certification.

"b. In making teaching assignments, the building (or District) administrators shall make provisions for professional growth by encouraging a pattern of rotation of teacher assignments in such a way that no one area or activity becomes the exclusive province of any one individual or class of teachers * * *

"k. All other factors being equal, seniority shall prevail with respect to class assignments and duties, class loads and use of portable classrooms. Such seniority rights shall be accorded to tenured teachers only and shall be based only on the total number of years teaching in the District."

the Commissioner's determination is irrational, arbitrary and capricious.

■ Addressing petitioner's contention *ad seriatum,* we hold that Margolin's appeal to the Commissioner is an independent remedy available to him pursuant to Education Law § 310. He was thus not required to make a preliminary showing that CTA breached its duty of fair representation to him to pursue it. Margolin's petition before the Commissioner alleged that he had been aggrieved by petitioner's official acts. The Commissioner has been granted broad powers as chief administrative officer of the State Education Department *(see,* NY Const, art V, § 4; art XI, § 2; Education Law §§ 207, 307; *see also, Matter of New York City School Bds. Assn. v Board of Educ.,* 39 NY2d 111, 116; *Matter of Board of Educ. v Ambach,* 90 AD2d 227, 231, *affd* 60 NY2d 758). Inherent in those powers is the right to examine and decide appeals to him from aggrieved persons who seek relief relevant to an education matter where their rights are implicated by official acts of school authorities. Such an interpretation is consistent with the Commissioner's broad mandate to control and manage the State's educational affairs and with the purpose of Education Law § 310. We hold that the instant collective bargaining agreement did not foreclose Margolin from appealing to the Commissioner. We find petitioner's cited authorities inapplicable to the instant situation as we read them more narrowly than proposed by petitioner. A collective bargaining agreement may foreclose a union member's individual right to sue his employer for damages in a judicial tribunal *(see, Goosley v Binghamton City School Dist. Bd. of Educ.,* 101 AD2d 942, 943). In other instances, where a negotiated union contract offers an alternative method of resolving disputes via binding arbitration and a member elects to so proceed, he waives rights accorded to him by statutory law *(see, Dye v New York City Tr. Auth.,* 88 AD2d 899, *affd* 57 NY2d 917). Here, Margolin did not proceed to binding arbitration. The right to do so was not available to him. Neither did he elect to waive his statutory rights under Education Law § 310 (7) by pursuit of some other remedy.

We conclude, as well, that it was not necessary to join CTA as a party in the administrative proceeding. The Commissioner has no power over CTA and, further, his decision does not relate to any rights of the union.

■■ Finally, addressing the validity of the Commissioner's decision, we note that our review thereof is limited. If the

decision has a rational basis, it cannot be overturned *(Matter of Shurgin v Ambach,* 56 NY2d 700). We note that petitioner attempted to amplify its position at Special Term by the submission of an affidavit of the assistant superintendent, with two attached exhibits, and an affidavit of the school attorney. These had not been before the Commissioner and cannot now be considered as part of the record on appeal *(see, Matter of Yanoff v Commissioner of Educ. of State of N. Y.,* 64 AD2d 763). The Commissioner's finding that the submissions of petitioner were insufficient to establish any basis for assigning Margolin to teach an English course as opposed to the five teachers junior to him in seniority so as to justify a disregard of his seniority rights is supported by the record.

LEVINE, J. (dissenting). I respectfully dissent. The issue on respondent Joseph B. Margolin's appeal to respondent Commissioner of Education was purely one concerning construction of a common, management prerogative clause of the collective bargaining agreement which Margolin's bargaining representative, the Commack Teachers' Association (CTA), negotiated and entered into. Margolin's appeal to the Commissioner occurred only after he had voluntarily elected to invoke the grievance machinery of the agreement, exhausted all of his remedies thereunder and received an unfavorable result. No overriding issue of educational policy was involved in that appeal, either under the teacher assignment clause itself or in the resolution of the dispute at the conclusion of the grievance process. There has been no determination by the Commissioner that CTA violated its duty of fair representation to Margolin and, in fact, his complaint to the State Public Employment Relations Board on that ground was subsequently dismissed, as unsupported, after a full hearing. Under the foregoing circumstances, I am of the view that the Commissioner should not have undertaken to overturn the result of the agreement's grievance procedures and to substitute his own interpretation of the contract provision under review. Accordingly, his determination was affected by an error of law (CPLR 7803 [3]) and should be annulled.

The grievance procedure contained in the contract between the petitioner and CTA implements a strong State policy in favor of "encouraging * * * public employers and * * * employee organizations to agree upon procedures for resolving disputes" (Civil Service Law § 200 [c]) and giving employee organizations such as Margolin's union control in dealing with

the employer over the "determination of * * * terms and conditions of employment, and the *administration of grievances arising thereunder*" (Civil Service Law § 203; emphasis supplied). To permit a disgruntled employee to invoke the appellate authority of the Commissioner under Education Law § 310 in order to upset the final resolution of a grieved dispute, inviting the Commissioner to act, in effect, as a super arbitrator, would destroy the finality of grievance/arbitration determinations in the public employment sector necessary to effectuate the foregoing State policy. This remains true whether the dissatisfied employee's attack on the unfavorable outcome of the grievance process is made via an appeal to the courts or to the responsible administrative agency. "A contrary rule * * * would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances *. * * A rule creating such a situation 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements' " *(Republic Steel Corp. v Maddox,* 379 US 650, 653, quoting *Teamsters Local v Lucas Flour Co.,* 369 US 95, 103).

Nor, despite the majority's contrary conclusion, does the broad statutory appellate power of the Commissioner over education matters override the foregoing State policy favoring the finality of the result of the grievance process in public collective bargaining agreements, at least where, as here, no serious issue of State educational policy is involved. Indeed, in *Board of Educ. v Associated Teachers of Huntington* (30 NY2d 122) the Court of Appeals considered this very issue with respect to appeals to the Commissioner under Education Law § 3020-a (5) following grievance arbitration, and resolved the issue in favor of finality: "We would but add that there is no basis for the fear expressed that to permit the grievance to go to arbitration will enable the employee to appeal—pursuant to section 3020-a, subdivision 5, of the Education Law—to the arbitrator *after* he has lost before the commissioner or the court or, conversely, to the Commissioner of Education or the Supreme Court *after* he has submitted to arbitration and lost before the arbitrator. Once the controversy is heard and the decision arrived at *either* by the arbitrator *or* by the commissioner *or* by the judge, that is the end of the matter" *(supra,* at p 132; emphasis in original).

Following the decision in *Board of Educ. v Associated Teachers of Huntington (supra),* other cases have similarly

held that a public employee who opted for and then unsuccessfully pursued the grievance procedure of the controlling collective bargaining agreement is precluded thereafter from seeking to overturn an unfavorable result through a statutory administrative appeal *(see, Dye v New York City Tr. Auth.,* 88 AD2d 899, *affd* 57 NY2d 917; *Matter of Kavoukian v Bethlehem Cent. School Dist.,* 63 AD2d 767, 768, *lv denied* 46 NY2d 709).

Finally, I find no significance that, in the instant case, Margolin exhausted his contract grievance remedies without reaching the fourth and final stage thereof in a formal arbitration which, under the agreement, only CTA could demand. Once Margolin proceeded through the grievance process to determine his complaint, he ceded his autonomy to control the prosecution of that claim at the final stage to CTA as provided in the agreement. In the absence of a demonstrated breach of the duty of fair representation, a union's disposition of the grievance process, by settlement with the employer pending arbitration *(Abrams v Board of Educ.,* 91 AD2d 618, 619-620) or while judicial review of an award was pending *(Matter of Civil Serv. Bar Assn. v City of New York,* 64 NY2d 188), has been held binding on an affected employee *(see also, Alfieri v General Motors Corp.,* 367 F Supp 1393, *affd* 489 F2d 731). Unless unfair representation is shown, a union's decision to conclude the grievance process as authorized under the collective bargaining agreement precludes resort to any alternative remedies by the employee. As stated in *Alfieri v General Motors Corp. (supra,* p 1395): "If [the employee] has exhausted his collective bargaining remedies in his claim for back pay, he is bound by the decision reached through the collective bargaining procedures * * * He has failed to show any improper or bad faith conduct on the part of the Union in processing his grievance which would repudiate the collective bargaining decision".

Here, also, unless CTA unfairly represented Margolin in the grievance procedures, set up in the collective bargaining agreement, his election to take the grievance route to resolve his claim constitutes a waiver of any alternative remedies, including an appeal to the Commissioner. Accordingly, I

would reverse the dismissal of the petition and annul the Commissioner's determination.

MAIN, J. P., and YESAWICH, JR., J., concur with MIKOLL, J.; LEVINE and HARVEY, JJ., dissent and vote to reverse in an opinion by LEVINE, J.

Judgment affirmed, without costs.