■ In the Matter of St. Luke's Presbyterian Nursing Center et al., Petitioners, v Cesar Perales, as Commissioner of Social Services of the State of New York, Respondent.— Casey, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent regarding petitioners' 1980, 1981 and 1982 Medicaid reimbursement rates.

Petitioners are two nursing homes which were purchased by Presbyterian Manor Homes of Western New York, Inc. (hereinafter Presbyterian Homes) in February 1980. As a result of this transaction, the character of petitioners' operation changed from proprietary to not-for-profit, and petitioners sought real property tax exemptions from local taxing authorities. Exemptions were granted effective for the 1981 tax year and thereafter, but petitioners were required to pay real property taxes for the 1980 tax year.

Petitioners' Medicaid reimbursement rates for the 1980, 1981 and 1982 rate years were based upon reported costs for

the period March 1, 1980 through December 31, 1980, which included the real property taxes paid by petitioners for the 1980 tax year. An audit of petitioners' costs for the 1980 base year by the Department of Social Services resulted in the conclusion that the real property taxes paid by petitioners in 1980 were a one-time, nonrecurring expense which should be given effect for one rate year. The auditors selected 1982 as the appropriate rate year, but excluded application of the trend factor, which adjusts base year costs for inflation, since the taxes were a one-time expense incurred in the base year and, thus, not subject to the effects of inflation. Petitioners pursued an administrative appeal but, following a hearing, respondent's designee issued a determination which sustained the auditor's treatment of petitioners' 1980 real property taxes. This CPLR article 78 proceeding to annul the determination ensued.

Petitioners seek to have the determination annulled on the grounds that it (1) is inconsistent with this State's prospective reimbursement method, (2) resulted in disparate or inconsistent treatment, (3) was made without adequate consideration of petitioners' operating expense during the relevant rate years as a mitigating factor, and (4) was based upon the application of a fixed standard that had not been promulgated as a regulation. We find no merit in any of petitioners' claims and, therefore, the determination must be confirmed and the petition dismissed.

Under the system of prospective calculation of reimbursement rates adopted by this State in 1969, reimbursement is made on the basis of predicted costs determined in advance; ordinarily, there is no reimbursement for actual costs which exceed the prospective rate, and if operating costs can be kept below that rate the facility can retain the difference (*Matter of Beekman-Downtown Hosp. v Whalen*, 44 NY2d 124, 128). Petitioners contend that real property taxes are operating costs and that since the real property taxes paid by petitioners were actual costs incurred in the base year used to predict costs in advance, they are entitled to retain the difference which resulted because the facilities were no longer liable for real property taxes after the base year. Respondent points out that petitioners' entitlement to reimbursement at the certified rate was "wholly inchoate until such time as the audit of cost reports, upon which the reimbursement rates were based, was performed and completed" (*Matter of Cortlandt Nursing Home v Axelrod*, 66 NY2d 169, 178-179, *cert denied* 476 US 1115). According to respondent, the audit of petitioners' cost reports

revealed that, in the unique circumstances of this case, the real property taxes paid by petitioners in the base year should not be treated as operating costs, but as one-time costs related to the property. We see nothing irrational in this determination.

The record establishes that real property taxes are normally treated as reimbursable operating costs, but that no reimbursement is allowed if the facility is entitled to an exemption. Since petitioners' operations changed to not-for-profit status in February 1980, they were entitled to real property tax exemptions for the 1981 tax year and thereafter. Thus, petitioners had no recurring liability for real property taxes after the 1980 tax year and, therefore, it was reasonable for respondent to conclude that petitioners' payment of real property taxes for the 1980 tax year should not be used in predicting petitioners' operating costs for subsequent years. The rationale for the system of prospective calculation of reimbursement rates is that it "would create both compulsion and an incentive to control costs of operation" *(Matter of Beekman-Downtown Hosp. v Whalen, supra,* at 128). Since the tax savings herein were due solely to the change in petitioners' status which resulted from their acquisition by Presbyterian Homes, and not the result of improved efficiency in petitioners' control of their operating costs, we see no conflict between respondent's determination and the prospective reimbursement system. Retroactive ratemaking is not allowed *(see, Matter of Wellsville Manor Nursing Home v Axelrod,* 142 AD2d 225, *lv denied* 74 NY2d 602), but rate adjustments based on a disallowance or limitation of reimbursable costs following an audit is permitted *(see, e.g., Matter of Hudson Val. Nursing Center v Axelrod,* 130 AD2d 862, 866; *Pinnacle Nursing Home v Axelrod,* 126 AD2d 940). In our view, the determination at issue here falls within the latter category.

Petitioners' remaining arguments require little discussion. The disparate treatment claim arises out of the allowance of certain nonrecurring base year costs, but as respondent points out, these cost savings were the result of changes related to petitioners' efficient operation, while the tax savings are simply the result of petitioners' change to not-for-profit status. Petitioners claim that respondent failed to take into account its substantial operating losses as mitigating factors, but the record establishes that the operating losses were in fact considered. Despite these losses, it was determined that allowing petitioners to retain the overpayments "would not be consistent with the overall intent of the Medicaid reimbursement

system which is to promote the efficient and cost effective operation of facilities". We see nothing irrational in this determination. Finally, we reject petitioners' claim that respondent applied "a fixed, general principle * * * without regard to other facts and circumstances relevant to the regulatory scheme" *(Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, 951).

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Casey, Mikoll, Levine and Mercure, JJ., concur.