■ In the Matter of ELCOR HEALTH SERVICES, INC., Respondent, v ANTONIA NOVELLO, as Commissioner of Health of the State of New York, et al., Appellants. [744 NYS2d 71] —Rose, J. Appeal from a judgment of the Supreme Court (Malone, Jr., J.), entered June 13, 2001 in Albany County, which partially granted petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of the Department of Health reducing a component of its Medicaid reimbursement rate.

Petitioner, a residential health care facility operating in Chemung County, commenced this proceeding seeking, inter alia, annulment of respondents' determination adjusting its case mix index based on misclassifications revealed in an audit of patient review instrument data conducted by the Department of Health (hereinafter Department) and recalculating petitioner's Medicaid reimbursement rate for the period beginning April 1, 1999.[1] Specifically, the Department found that petitioner had improperly classified 28 patients as receiving restorative therapy rather than maintenance therapy, reduced petitioner's reimbursement rate accordingly, and directed that future patient assessments be performed by an independent auditor. Petitioner argued that the Department's nurse-auditors had improperly "second-guessed" the physician-prescribed rehabilitative care plans for its patients by denying reimbursement even though petitioner had provided restorative therapy as prescribed. Petitioner also argued that the Department acted arbitrarily and capriciously in using a fixed general rule precluding reimbursement for restorative therapy unless it produces actual improvement (hereinafter actual improvement standard) that has not been properly adopted and filed as a formal regulation. Supreme Court accepted this latter argument, granted the petition and remitted the matter to respondents to review the patient classifications without re-

---

1. We refer the reader to *Concourse Rehabilitation & Nursing Ctr. v Whalen* (249 F3d 136) for an overview of the Medicaid program and *Matter of Teresian House Nursing Home Co. v Chassin* (218 AD2d 250) for a description of its process for auditing patient assessments.

course to the actual improvement standard. Respondents now appeal.[2]

Respondents argue that Supreme Court's ruling was improper because the Department's actual improvement standard is based on a rational interpretation of an existing regulation and, thus, is not an unfiled rule. Petitioner reiterates its contentions that the denial of reimbursement for restorative therapy provided to its patients was improper both because it was based on an auditor's after-the-fact medical judgment and on an unfiled rule requiring actual improvement. Since the Department's auditors were not required to defer to the judgments of petitioner's physicians and therapists in retrospectively reviewing what patient care qualified for Medicaid reimbursement (*see, Concourse Rehabilitation & Nursing Ctr. v DeBuono*, US Dist Ct, SD NY, June 11, 1988, Conti, J., slip op at 12, *appeal dismissed* 179 F3d 38), we find no merit in petitioner's first contention. Rather, as considered by Supreme Court and as presented on appeal, the central issue is whether respondents' actual improvement standard for the restorative therapy classification is a rational interpretation of an existing regulation or a new unfiled rule being applied in violation of the State Administrative Procedure Act.

Under 10 NYCRR 86-2.30 (i) (Instructions: Patient Review Instrument [PRI] [27]), a restorative therapy classification is proper where "[t]here is positive potential for improved functional status within a short and predictable period of time" and the "[t]herapy plan of care and progress notes * * * support that [the] patient has this potential/is improving." In its clarification sheet provided to nursing homes, the Department explains that the phrase "has this potential/is improving" means that the patient must demonstrate both the potential for functional improvement and the actual occurrence of such improvement in order to qualify for the restorative therapy classification. On this appeal, the Department acknowledges that it has a fixed policy of applying the quoted regulation in this manner.

Contrary to Supreme Court's conclusion, we find that the Department's clarification sheet is interpretive, that its interpretation has a rational basis and that, therefore, the resulting actual improvement standard does not constitute an improper unfiled rule (*see*, State Administrative Procedure Act

---

2. Since the judgment issued by Supreme Court is nonfinal and, thus, not appealable as of right (*see*, CPLR 5701 [b] [1]; [c]), we exercise our authority to grant permission to appeal sua sponte given the importance of the issue presented (*see, Matter of Gane v Ambach*, 135 AD2d 1013, 1013-1014).

§ 102 [2] [b] [iv]; *see also, Matter of Dubb Enters. v New York State Liq. Auth.*, 187 AD2d 831, 833; *cf., Matter of Cordero v Corbisiero*, 80 NY2d 771, 772-773; *Matter of Stuyvesant Polyclinic v Axelrod*, 117 AD2d 99, 101). Generally, "courts will defer to an agency's interpretation of its own regulations if not irrational" (*Matter of Silver Lake Nursing Home v Axelrod*, 156 AD2d 789, 790; *see, Matter of Marzec v DeBuono*, 95 NY2d 262, 266; *Matter of County of Rockland v Axelrod*, 157 AD2d 960, 961), and the agency's interpretation is not rendered irrational simply because the regulation may be susceptible to a different rational interpretation (*Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227, 239).

Petitioner focuses on the role played by the forward slash or virgule in the phrase "patient has this potential/is improving." Arguing that common usage reflects that the virgule merely means "or," petitioner concludes that the Department's requirements of potential improvement *and* actual improvement contradicts the language of the regulation. Our view of the use of the virgule in the regulation at issue here leads to a contrary conclusion. "Virgule" has been defined as a symbol used to denote, inter alia, "or" or "and or" (*see*, Webster's Third New International Dictionary 2555 [unabridged 1986], cross-referencing "diagonal," Webster's Third New International Dictionary 622 [unabridged 1986]). Even defined in this way, the virgule allows for usage as "and," resulting in no contradiction when both alternatives apply.

However, "virgule" is more comprehensively defined as "a short oblique stroke ( / ) between two words indicating that whichever is appropriate may be chosen to complete the sense of the text in which they occur" (Random House Dictionary of the English Language 2125 [unabridged 2d ed 1993]). This definition is particularly apt here because the phrase "patient has this potential/is improving" follows, and is parallel to, the preceding phrase "therapy plan of care and progress notes." To interpret the entire regulation, rather than parse the latter phrase only, it is rational to view the virgule as indicating that the reader should use the words that most appropriately complete the sense of the whole sentence. As the earlier phrase has two concepts with one anticipating future progress and the other reporting actual progress, the phrase "patient has this potential/is improving" provides the choice between potential and actual circumstances depending upon whether a plan for a patient or a patient's progress is being considered. Interpreted this way, the regulation requires a therapy plan to set forth the patient's potential for improvement and the patient's prog-

ress notes to reflect actual improvement in order to qualify as restorative. Such an interpretation is also consistent with the overall regulatory scheme, for it seeks to assure that restorative therapy is utilized when it potentially will result in patient improvement while excluding reimbursement if the expected improvement is not achieved (*see, Concourse Rehabilitation & Nursing Ctr. v Whalen*, 249 F3d 136, 143-146).[3] Given the parallel structure of the pertinent phrases of the regulation and the recognized use of the virgule to implement such parallelism, we find no conflict between the cited regulation and respondents' interpretation, and conclude that their interpretation has a rational basis.

Finally, petitioner's contention that the issue is not judicially reviewable because the Department, through its auditors, did not expressly rely on the actual improvement standard in reclassifying petitioner's patients is belied by the petition itself, which narrowly framed the issue by asserting that the Department's actual improvement standard had resulted in the reclassifications. Accordingly, it was error to grant the petition and require further assessment by the Department.

Crew III, J.P., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as partially granted the petition; petition denied in its entirety; and, as so modified, affirmed.

---

**3.** The Health Care Financing Agency's "Carriers Manual" provides as follows: "Restorative Therapy. To constitute physical therapy a service must, among other things, be reasonable and necessary to the treatment of the individual's illness. * * * In addition, there must be an expectation that the patient's condition will improve significantly in a reasonable (and generally predictable) period of time. However, *if at any point in the treatment of an illness, it is determined that the expectations will not materialize, the services will no longer be considered reasonable and necessary; and they, therefore, should be excluded from coverage under § 1862 (a) (1) of the Social Security Act* [42 USC § 1862 (a) (1)]" (Carriers Manual, part 3, ch II, § 2210.1 [emphasis supplied]).