■ In the Matter of WELLS NURSING HOME, INC., Petitioner, v ANTONIA NOVELLO, as Commissioner of Health, et al., Respondents. [866 NYS2d 806]—

Lahtinen, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Fulton County) to review a determination of respondent Commissioner of Health which found that petitioner committed an unacceptable practice in relation to the receipt of Medicaid reimbursements.

Petitioner, a nursing home in Fulton County, challenges on several grounds a determination of respondent Commissioner of Health that it received a total of about $200,000 in overpayments of Medicaid reimbursements during the five years from the beginning of 1997 to the end of 2001. During the base year (1983) used for reimbursement calculation (*see* 10 NYCRR 86-2.10 [b] [1] [i]), petitioner reported ancillary service costs for laboratory services, EKG services and radiology services (*see* 10 NYCRR 86-2.10 [f] [2]). These costs, adjusted for inflation, were reflected in petitioner's future reimbursement rates (*see generally Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581 [2005] [discussing the prospective system used for reimbursement rates]). At the time of the base year, petitioner had a shared services agreement with Johnstown Hospital, under which petitioner received the ancillary services in exchange for providing other services to the hospital. After the hospital closed in 1988, petitioner contracted out these services and the new service providers billed Medicaid directly. Although petitioner's annual cost reports showed no costs for the ancillary services from 1989 to 2001, petitioner did not notify the Department of Health that these ancillary services had been terminated (*see* 10 NYCRR 86-2.27) and, thus, they continued to be included in the reimbursement calculation. The Department's audit disclosed such fact and it sought to recoup the amounts overpaid as a result thereof during the years 1997 to 2001. Following a hearing, the Administrative Law Judge affirmed the Department's audit adjustments. Petitioner commenced the instant proceeding, which Supreme Court transferred to this Court pursuant to CPLR 7804 (g).

Petitioner initially argues that the Department was barred by the applicable regulatory statute of limitations from seeking recoupment. An audit is timely if commenced within six years from the later of the due date or actual filing date of the operator's cost report (*see* 10 NYCRR 86-1.8 [c]; *Matter of County of Rockland v Axelrod*, 157 AD2d 960, 961 [1990]; *see also* 18 NYCRR 517.3). Here, petitioner's cost report for the earliest year in dispute (1997) was due March 31, 1998 and was filed in May 1998. The Department notified petitioner in December 2002 that it had commenced an audit for the years in question. This was well within the six-year time frame. We find no merit in petitioner's contention that the six years should be deemed to have commenced at various earlier times, including when it terminated the ancillary services in the 1980s or when its costs were accepted in a 1990 audit (which included the base year as well as years after the ancillary services had terminated). Such a result would be inconsistent with the plain language of the governing regulations.

Next, petitioner asserts that the Department acted arbitrarily by focusing narrowly on the subject ancillary services and not considering the full impact of other costs incurred after the base year. We have previously held that "10 NYCRR 86.2.27 requires providers to notify [the Department] of the 'deletion' of any previously offered services and provides that overpayments made by reason of such a deletion are recoverable" (*Matter of Northern Metro. Residential Healthcare Facility, Inc. v Novello*, 24 AD3d 1069, 1073 [2005]). Simply stated, the services that petitioner no longer provided still formed a part of its Medicaid reimbursement in the subject years. This was at a time when the outsider providers were also billing Medicaid for those services. While petitioner undoubtedly faced escalating costs in other areas, it nevertheless was not arbitrary for the Department to refuse to permit those newly escalating costs to be partially covered by reimbursement for services not only no longer offered by petitioner, but that were provided by other health care facilities that billed directly for those services. The fact that petitioner reported zero costs in its annual cost reports regarding such ancillary services during the subject years—a result that could flow from the incentive to operate efficiently (*see generally Matter of St. Luke's Presbyt. Nursing Ctr. v Perales*, 170 AD2d 915, 916-917 [1991])—did not comply with the relevant regulation or otherwise adequately notify the Department that such services had been deleted. And, such a failure to notify the Department of the deletion of services can, as here, result in an adjustment of reimbursement received (*see* 10 NYCRR 86-2.27; *Matter of Northern Metro. Residential Healthcare Facility, Inc., v Novello*, 24 AD3d at 1073).

Finally, we are unpersuaded by petitioner's contention that the audit adjustments violated the Boren Amendment to the Federal Medicaid Act (*see* 42 USC former § 1396a [a] [13] [A]) or its New York counterpart (*see* Public Health Law § 2807 [3]). The Boren Amendment was repealed in 1997 (*see Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d 538, 545 [2006]; *Matter of St. James Nursing Home v DeBuono*, 12 AD3d 921, 922 [2004]). The state statute, which is still in effect, requires that Medicaid reimbursement rates be reasonable and adequate to meet the necessary costs of an efficiently and economically operated facility (*see* Public Health Law § 2807 [3]; *Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d at 546). The statute, however, "does not require rates to cover every nursing home's actual costs" (*Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d at 546). Moreover, the Department is not obligated to continue to reimburse petitioner for services no longer provided simply because petitioner had previously been certified as an efficiently and economically operated facility.

Peters, J.P., Rose, Kane and Kavanagh, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.